```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                          MIAMI DIVISION
                    CASE NO.  22-CR-20326-KMM


UNITED STATES OF AMERICA,

                    Plaintiff,

        vs.
                                              Miami, Florida
                                              January 24, 2023
ANDRE LORQUET,                                Pages 1-31

                    Defendant.
_____

              TRANSCRIPT OF CHANGE OF PLEA HEARING
               BEFORE THE HONORABLE LAUREN LOUIS
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

FOR THE PLAINTIFF:     Jonathan Bailyn, A.U.S.A.
                       US Attorney's Office
                       99 Northeast 4th Street
                       Miami, FL  33132




FOR THE DEFENDANT:     Zeljka Bozanic, Esq.
                       Bozanic Law, P.A.
                       2847 Hollywood Blvd
                       Hollywood, FL 33020



TRANSCRIBED BY:        DAWN M. SAVINO, R.P.R., C.R.R.
                       Official Federal Court Stenographer
                       400 N. Miami Avenue, 10S03
                       Miami, Florida  33128
                       Telephone:  305-523-5598
                       Dawn_Savino@flsd.uscourts.gov
```

```
1                    P-R-O-C-E-E-D-I-N-G-S
2            COURTROOM DEPUTY:  The United States District Court for
3    the Southern District of Florida is now in session, the Honorable
4    Lauren Louis presiding.
5            Calling case number 22-20326-criminal-Judge Moore,
6    United States versus Andre Lorquet.
7            Counsel, would you please note your appearances for the
8    record.
9            MR. BAILYN:  Good morning, Your Honor.  Jonathan Bailyn
10   on behalf of the United States.
11           THE COURT:  Thank you, Mr. Bailyn.
12           MS. BOZANIC:  Good morning, Your Honor.  Zeljka Bozanic
13   on behalf of Andre Lorquet, who is present.
14           THE COURT:  Okay.  Thank you, Ms. Bozanic.
15           I see, Mr. Lorquet, I just want to make sure two things.
16   Am I saying your name right, "Lorquet"?
17           THE DEFENDANT:  Yes, ma'am.
18           THE COURT:  Okay.  And it doesn't look like you're
19   wearing the cuffs; is that right?
20           THE DEFENDANT:  No, ma'am.
21           THE COURT:  Okay.  Thank you to my deputies.  You can
22   all have a seat.
23           So it's my understanding, Ms. Bozanic, that your client
24   is here because he wishes to change his plea today; is that
25   right?
```

3

1          MS. BOZANIC:  Yes, Your Honor.

2          THE COURT:  Can I ask the attorneys a couple of

3    questions before I have him sworn?

4          MS. BOZANIC:  Yes, Your Honor.

5          THE COURT:  About the plea agreement, if it's the same

6    one that was e-mailed to me; is that right?

7          MR. BAILYN:  So Your Honor, we made one change.

8          THE COURT:  Okay.

9          MR. BAILYN:  The statutory maximum penalty in the plea

10   agreement that was e-mailed to you said 20, it should be 10.

11   We've edited it in the signed plea agreement.

12          THE COURT:  Okay.  All right.  So that's for Count 7,

13   right?

14          MS. BOZANIC:  And Judge, I think also in the plea

15   agreement we took out the paragraph, I think it was 15, Jonathan?

16          THE COURT:  Could I -- okay.  Oh, okay.  This is the one

17   that you've signed.  All right.  Then just give me a second.

18          MR. BAILYN:  Sure.

19          THE COURT:  Let me close the one you did not sign.

20   Okay.  So this one still at Paragraph 4 says Count 1, that should

21   say Count 7?

22          MR. BAILYN:  You're right, Your Honor.

23          THE COURT:  Okay.  My next question is Paragraph 8, I

24   wanted to see if this is a typo.  This has language that would

25   have you recommend two points for timely acceptance, but not make

4

1    the motion for the third.  Is that intentional, Mr. Bailyn?

2              MR. BAILYN:  Yes, Your Honor.

3              THE COURT:  Okay.  Let me just check my notes again and

4    see if there was anything else that I was not sure I understood.

5              Okay.  There was a paragraph you took out.  Which was

6    that?

7              MR. BAILYN:  Sure, Your Honor.  There's a paragraph in

8    the draft, it was Paragraph 15 in the draft, it's no longer in

9    there.  It involved providing financial documents, et cetera,

10   with regard to asset forfeiture, but the asset forfeiture

11   attorney and defense counsel agreed to remove that.

12             THE COURT:  Okay.  Give me a second to look at what that

13   language was.  Okay.  Paragraph 15, okay, imposed a series of

14   obligations including, you know, a deadline to provide the

15   information.  That's the paragraph that no longer is part of

16   this?

17             MR. BAILYN:  That's correct, Your Honor.

18             THE COURT:  Okay.  Okay.  All right.  Then I won't

19   review that with Mr. Lorquet.

20             Okay.  With that, could I have Mr. Lorquet sworn?

21             COURTROOM DEPUTY:  Stand and raise your right hand.  Do

22   you solemnly swear or affirm that the testimony you're about to

23   give will be the truth, the whole truth, and nothing but the

24   truth so help you God?

25             THE DEFENDANT:  Yes, ma'am.

1          COURTROOM DEPUTY:  Thank you, sir.

2          THE COURT:  Okay.  Mr. Lorquet, have a seat.  I

3   apologize, but I just want to confirm again, I've been saying

4   your name right, "Lorquet"?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Do you understand that you're now under

7   oath, and if you answer any of my questions falsely your answers

8   may later be used against you in another prosecution for perjury

9   or making a false statement?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  I understand you're here today because you

12  would like to change your plea in this case from a plea of not

13  guilty to a plea of guilty.  Under the law you cannot change that

14  plea without first getting permission from the Court.  I have to

15  determine that your decision to plead guilty is a knowing and

16  voluntary decision supported by an independent basis in fact, so

17  I'm going to ask you some questions to make sure that you

18  understand what's happening, you know what your options are, you

19  know what rights you would be giving up if you plead guilty, and

20  you know what the possible penalties and other consequences will

21  be if you plead guilty.

22          Also in federal court you can't plead guilty to

23  something you didn't do, so I need to make sure that there are

24  facts to support your guilty plea.

25          Do you understand that these are the purposes of my

1    questioning?

2         THE DEFENDANT:  Yes, ma'am.

3         THE COURT:  If at any time you want to speak to your

4    lawyer before answering one of my questions, just let me know and

5    I'll give you time to speak with her.  Likewise, if I ask you a

6    question that you don't understand, will you tell me so that I

7    can try to explain it different or better for you?

8         THE DEFENDANT:  Yes, ma'am.

9         THE COURT:  Okay.  I want to also note for the parties

10   that you may notice we do not have a court reporter here,

11   everything is being transcribed by the microphone.  If you need a

12   transcript, you just request it.

13        So two things here.  First, is there any objection from

14   the Government to proceeding without a court reporter?

15        MR. BAILYN:  No, Your Honor.

16        THE COURT:  Ms. Bozanic?

17        MS. BOZANIC:  No, Your Honor.

18        THE COURT:  Second, you've got to use the microphone or

19   you won't show up on the transcript.  Okay?  Okay.  All right.

20        So back to you, Mr. Lorquet.  Would you tell me your

21   full name please?

22        THE DEFENDANT:  Andre Lorquet, ma'am.

23        THE COURT:  How old are you?

24        THE DEFENDANT:  I think 38.

25        THE COURT:  The older we get the harder it is to answer

1    that question on the first try.

2            Mr. Lorquet, where were you born?

3            THE DEFENDANT:  New York, ma'am.

4            THE COURT:  And can I safely assume then that you're a

5    US citizen?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  Tell me how far you went in school?

8            THE DEFENDANT:  High school.

9            THE COURT:  Did you graduate high school?

10           THE DEFENDANT:  No, ma'am.

11           THE COURT:  What grade did you get through?

12           THE DEFENDANT:  12th.

13           THE COURT:  Okay.  And have you gotten a diploma or

14   equivalent?

15           THE DEFENDANT:  No, ma'am.

16           THE COURT:  Not too late.

17           Did you do that schooling up in New York?

18           THE DEFENDANT:  No, ma'am.  Here in Miami.

19           THE COURT:  What school did you go to here?

20           THE DEFENDANT:  Miami Springs.

21           THE COURT:  Okay.  All right.

22           Mr. Lorquet, can I safely assume that you can read and

23   write?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  Okay.  Mr. Lorquet, have you ever been

1    treated for any type of mental illness or an addiction to any

2    type of narcotic drug?

3             THE DEFENDANT:  No, ma'am.

4             THE COURT:  No to both questions?

5             THE DEFENDANT:  Yes, ma'am.

6             THE COURT:  Okay.  Are you now under the influence of

7    any drugs, alcohol or any intoxicant that would prevent you from

8    understanding these proceedings?

9             THE DEFENDANT:  No, ma'am.

10            THE COURT:  Have you had any medicine at all today, even

11   a Tylenol?

12            THE DEFENDANT:  My blood pressure pills.

13            THE COURT:  Okay.  Tell me about that.  You have

14   prescribed blood pressure medicine?

15            THE DEFENDANT:  Yes, ma'am.

16            THE COURT:  And you took the medicine as required today?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  Are you having any symptoms that you think

19   would interfere with your ability to answer me honestly?

20            THE DEFENDANT:  No, ma'am.

21            THE COURT:  Okay.  Do you feel like you're thinking

22   clearly and fully understanding what's happening?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  Based on my observations of Mr. Lorquet and

25   his answers to my questions, I find he's alert and competent to

1    proceed.

2           Mr. Lorquet, I'm not the judge who is assigned to your

3    overall case, which means that I'm not the judge who will

4    sentence you if your guilty plea is accepted.  That judge is

5    Judge Moore.  He's referred this matter to me for today's plea.

6    Because the charges against you are felonies, you have the right

7    to have Judge Moore conduct this change of plea hearing.  If you

8    want, however, you can agree to have me conduct the hearing.  I'm

9    going to ask you the same questions that Judge Moore would ask

10   you.  If I agree that your plea should be accepted, the procedure

11   going forward, including how your sentencing will be conducted,

12   is the same.

13           Did you have a chance to speak to your attorney about

14   having me conduct this hearing today?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  Understanding that you have the right to

17   have Judge Moore conduct the hearing, do you agree to have me do

18   it instead?

19           THE DEFENDANT:  Yes, ma'am.

20           THE COURT:  Mr. Bailyn, any objection on behalf of the

21   Government?

22           MR. BAILYN:  No, Your Honor.

23           THE COURT:  Ms. Bozanic?

24           MS. BOZANIC:  No, Your Honor.

25           THE COURT:  I find that Mr. Lorquet's decision to have

```
1   me -- consent to have me conduct this hearing is a knowing and
2   voluntary decision.
3           Mr. Lorquet, have you received a copy of the indictment
4   that's pending against you, that is the written charges made
5   against you in this case?
6           THE DEFENDANT:  Yes, ma'am.
7           THE COURT:  Have you fully discussed those charges and
8   the case in general with your attorney?
9           THE DEFENDANT:  Yes, ma'am.
10          THE COURT:  Have you had enough time to think about this
11  and talk about the case with your attorney?
12          THE DEFENDANT:  Yes, ma'am.
13          THE COURT:  Did you and your lawyer review the discovery
14  materials, that is the evidence the Government says it would use
15  to prove the case against you at trial?
16          THE DEFENDANT:  Yes, ma'am.
17          THE COURT:  Did you discuss with your lawyer whether
18  there were possible defenses you might have to the charges,
19  including witnesses that you might call on your behalf?
20          THE DEFENDANT:  Yes, ma'am.
21          THE COURT:  Okay.  Are there any questions about the
22  case you've asked your lawyer but she's not answered to your
23  satisfaction, or anything you asked her to do that she's not done
24  for you?
25          THE DEFENDANT:  Yes, ma'am.
```

```
 1              THE COURT:  Let me ask the question again, and maybe
 2     I'll ask it in two parts.  Is there any questions about the case
 3     that you've asked but that your lawyer has not answered to your
 4     satisfaction?
 5              THE DEFENDANT:  Repeat that again?
 6              THE COURT:  Is there anything you've asked your lawyer
 7     to do but she's failed to do it for you?
 8              THE DEFENDANT:  No, ma'am.
 9              THE COURT:  Is there anything that you asked her about
10     the case but that she hasn't been able to answer that for you?
11              THE DEFENDANT:  No, ma'am.
12              THE COURT:  Okay.  Are you fully satisfied then with
13     your lawyer and the advice and representation she's given you?
14              THE DEFENDANT:  Yes, ma'am.
15              THE COURT:  Okay.  Let me see this plea agreement.
16     Okay.  I've received a seven-page document entitled Plea
17     Agreement that appears to bear your signature above the line
18     "Defendant."  Did you, in fact, sign this plea agreement?
19              THE DEFENDANT:  Yes, ma'am.
20              THE COURT:  Before you signed the plea agreement, did
21     you have a chance to review each and every paragraph of the plea
22     agreement with your lawyer?
23              THE DEFENDANT:  Yes, ma'am.
24              THE COURT:  Did your lawyer answer any questions you may
25     have had about the plea agreement?
```

```
 1              THE DEFENDANT:  Repeat that again?

 2              THE COURT:  Sure thing.  And this falls in the category

 3    if you need a minute you tell me, okay?

 4              So my question for you was if you had questions about

 5    what the plea agreement means, were you able to ask your lawyer

 6    those questions and did she answer you?

 7              THE DEFENDANT:  Yes, ma'am.

 8              THE COURT:  Okay.  Do you believe that you fully

 9    understand what's in the plea agreement?

10              THE DEFENDANT:  Yes, ma'am.

11              THE COURT:  Okay.  Paragraph 1 of the plea agreement

12    says that you're agreeing to plead guilty to Count 7 of the

13    indictment which charges you with the crime of money laundering

14    in violation of Title 18 United States Code Section 1957, and

15    Count 9 which charges you with the crime of aggravated identity

16    theft.

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  I'm just giving you a minute here,

19    Mr. Lorquet.

20              Mr. Lorquet, I'm going to go over the maximum penalties

21    with you now.  Do you feel ready to keep going with me?

22              THE DEFENDANT:  Yes, ma'am.

23              THE COURT:  Okay.  Those are listed at paragraph -- I'll

24    see if it's still four of your plea agreement.

25              Do you have a copy of the plea agreement there, Ms.
```

1    Bozanic?

2         MS. BOZANIC:  Yes, Your Honor.

3         THE COURT:  Okay.  So at Paragraph 4 it lists the

4    maximum penalties you see there that Count 7, not 1, I know your

5    plea agreement says 1 but it should say Count 7, the count that

6    charges you with money laundering, the maximum penalty is up to

7    10 years imprisonment followed by supervised release of up to

8    three years.  In addition to any term of imprisonment or

9    supervised release, the court can impose a fine of up to $250,000

10   and the court can also impose forfeiture and restitution.

11        The penalty that may be imposed for Count 9, the

12   aggravated identity theft count, is two years of imprisonment

13   which will run consecutive to any sentence on any other count,

14   followed by a term of supervised release of up to a year and

15   again, on that count, the court may impose a fine of up to

16   $250,000 and may order forfeiture and restitution.  Okay.  The

17   court will also impose a special assessment or court costs of

18   $100 per count for a total of $200, and that's due at the time of

19   sentencing.

20        Also Mr. Lorquet, I know you've indicated to me that you

21   are a US citizen, but if you're not, your conviction of this

22   offense could be used to remove you from the United States, to

23   deny you citizenship within the United States, and deny admission

24   in the United States in the future.

25        Do you just understand the possibility of removal?

1    THE DEFENDANT:  Repeat that again?

2    THE COURT:  Sure thing.  Again, I understand that you've

3    told me that you were born in New York and you're a US citizen.

4    However, the conviction of a felony could cause you to -- if you

5    are not a US citizen, could cause removal from the United States,

6    deny you citizenship within the United States, and deny admission

7    into the United States in the future.

8    Do you understand that possibility if you're not a US

9    citizen?

10    THE DEFENDANT:  Yes, ma'am.

11    THE COURT:  Supervised release is a period of time after

12    incarceration when you have to comply with conditions that are

13    set by the court.  During that time you'll have to report to a

14    probation officer.  Do you understand that if you violate the

15    terms of your supervised release, you can be given additional

16    time in prison?

17    THE DEFENDANT:  Yes, ma'am.

18    THE COURT:  Do you also understand that parole has been

19    abolished, and that if you are sentenced to time in prison you

20    won't be released on parole for that time?

21    THE DEFENDANT:  Yes, ma'am.

22    THE COURT:  The Court may be required to order or may

23    order, under the mandatory Victim's Restitution Act, that you

24    make restitution to any victim of the offense.  Do you understand

25    that restitution is separate and apart from fines or forfeiture

1   which may be ordered?

2        THE DEFENDANT:  Yes, ma'am.

3        THE COURT:  Okay.  I want to emphasize two things about

4   the maximum penalties.  First, because the possible sentence is

5   more than a year in prison, you would be pleading guilty to a

6   felony.  Do you understand that if your plea is accepted, you'll

7   be adjudged guilty of a felony and that adjudication may deprive

8   you of valuable civil rights such as the right to vote, the right

9   to hold public office, the right to serve on a jury and the right

10  to possess any type of firearm?

11       THE DEFENDANT:  Yes, ma'am.

12       THE COURT:  If you hold any professional licenses in the

13  United States, a conviction of a felony could cause you to lose

14  those as well.

15       Second, by pleading guilty, you're taking the risk that

16  Judge Moore will sentence you to the maximum penalty.  As we sit

17  here today no one knows what your sentence will be, but do you

18  understand that as long as your sentence does not exceed the

19  maximum penalty I just described, you won't be able to take back

20  your plea if you're not happy with the sentence that's imposed?

21       THE DEFENDANT:  Yes, ma'am.

22       THE COURT:  Did you and your lawyer have a chance to

23  talk about how the sentencing guidelines work and how they might

24  apply to your case?

25       THE DEFENDANT:  Yes, ma'am.

1        THE COURT:  So generally speaking the way the guidelines

2    work is by taking a certain number of points based on the offense

3    conduct, and a certain number of points based on your criminal

4    history.  We take those points and apply them to a grid and that

5    gives an advisory range of months that Judge Moore has to

6    consider.  Do you understand that this is generally how the

7    guidelines work?

8        THE DEFENDANT:  Yes, ma'am.

9        THE COURT:  So if your plea is accepted, the Probation

10   Office will prepare a Presentence Investigation Report for Judge

11   Moore.  Part of that report will be the probation officer's

12   calculation of how the sentencing guidelines apply to your case.

13   If you don't agree, you'll have a chance to object and have Judge

14   Moore decide who is correct.

15       At Paragraph 8 of the plea agreement it talks about

16   acceptance of responsibility.  Under the sentencing guidelines, a

17   defendant can get points off for accepting responsibility and

18   pleading guilty.  In this paragraph the Government is agreeing to

19   recommend that you get off up to two points off, but the

20   Government is not required to make that recommendation if you

21   fail to make a full, accurate and complete disclosure to the

22   Probation Office of the circumstances surrounding the relevant

23   offense conduct, or if you're found to have misrepresented facts

24   to the Government prior to entering the plea agreement, or if you

25   commit any misconduct after entering into the plea agreement.  So

1    long as you meet those conditions, the Government is promising to

2    recommend that you get those points off.  Judge Moore is not

3    bound by that recommendation or required to follow it.

4            Do you understand that if Judge Moore does not follow

5    the Government's recommendation, that will not be grounds to

6    withdraw your plea?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  The sentencing guidelines are only one of

9    several factors that Judge Moore must consider in deciding on

10   your sentence.  After considering all of the required factors he

11   may impose a sentence within the advisory guideline range, above

12   that range or below that range.  He may impose a sentence that's

13   greater than what you and your lawyer have estimated.  What I

14   want to make sure you understand is that if Judge Moore gives you

15   a sentence that you are not happy with, you will not be allowed

16   to take back of plea.  Do you understand?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:  I want to go over paragraph -- well, let's

19   see if it's still 12.  Okay.  Yes.  At Paragraph 12 of your plea

20   agreement it talks about forfeiture.  You have agreed to forfeit

21   your interest to any property involved in the violation or that

22   was derived from proceeds that were traceable to that property.

23           You've agreed here to waive any defense of the

24   forfeiture including constitutional challenges and applicable

25   time limits.

1          You, I think, let me just double-check, have still

2     agreed to assist in the forfeiture proceedings?  Yes.  At

3     Paragraph 14 you've still agreed to assist in the forfeiture

4     proceedings by, for example, disclosing assets and providing

5     information to the Government, and you've agreed to forfeiture of

6     substitute property and a money judgment in the amount of 300,000

7     -- $329,195.  Mr. Bailyn, did I get that right?

8          MR. BAILYN:  Yes, Your Honor.

9          THE COURT:  And you understand that this judgment is

10    separate from any restitution or fine that might be imposed.

11         Now, Paragraph 12 also lists other property that might

12    be used to satisfy that, including money in a Bank of America

13    account, a Tesla and some insurance proceeds.  My question for

14    you is whether or not you have reviewed these forfeiture

15    obligations with your attorney and you fully understand what

16    you're committing to and what you're giving up.

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  Okay.  With -- let's see if it's still --

19    now, at Paragraph 15 I'd like to review with you you've agreed

20    here that should the US Attorney's Office determine, in its sole

21    judgment and discretion, that you've not complied with your

22    obligations under the agreement, the office will be released from

23    its obligations under the agreement, and you agree that you've

24    adopted the entire factual basis -- that was my last question,

25    Mr. Bailyn.  I couldn't find it.  Is that supposed to mean the

1   factual proffer?  Because the factual proffer follows that

2   paragraph.  So --

3           MR. BAILYN:  Yes, it's referenced the factual proffer.

4           THE COURT:  Okay.  So just to make sure that we're all

5   on the same page then, because Paragraph 15 refers to the entire

6   factual basis and then later uses capitalized "factual proffer",

7   but they are not different things, they are one and the same.

8           MR. BAILYN:  They are one and the same.

9           THE COURT:  Okay.

10          MR. BAILYN:  That's a good drafting point, Your Honor.

11          THE COURT:  I don't mean to be particular, I just want

12  to make sure that my Defendant understands what obligation he's

13  undertaking because it's my understanding, Mr. Lorquet, that you

14  have committed in this paragraph to adopting that factual proffer

15  that you signed as your own statement, and you've stipulated to

16  the admissibility of the factual proffer in any case that may be

17  brought by the office.  Did you discuss that provision with your

18  attorney?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Do you understand this agreement and what

21  you are binding yourself to in agreeing that that factual proffer

22  may be admissible in any case brought by the US Attorney's

23  office?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Okay.  Your plea agreement also contains

1    what's called an appeal waiver.  Did you discuss the appeal

2    waiver with your lawyer?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Okay.  Let me just find which paragraph that

5    is now.

6              MS. BOZANIC:  It's Paragraph 9, Judge.

7              THE COURT:  Thank you, Ms. Bozanic.  Yes, it is.  Okay.

8         So if you plead guilty you cannot appeal the conviction

9    because you're admitting your guilt, but you could otherwise

10   appeal the sentence imposed.  What the plea agreement says is

11   that you're agreeing not to appeal the sentence and you would

12   only have appeal in limited circumstances.  For example, if the

13   Government files an appeal or if the sentence exceeds the maximum

14   permitted by statute or is the result of an upward departure or

15   upward variance from the guideline range that the Court

16   establishes at sentencing.

17             Mr. Lorquet, do you understand what you're giving up?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Okay.  I find the appeal waiver is a

20   knowing, voluntary and fully informed waiver.

21             The last paragraph of your plea agreement, Mr. Lorquet,

22   says that there are no other promises or agreements other than

23   what's contained in this written document.

24             So let me ask you, sir, does the written plea agreement

25   in fact contain every understanding that you have with the

1      Government?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Mr. Bailyn, are there any undisclosed

4      promises?

5              MR. BAILYN:  No, Your Honor.

6              THE COURT:  Ms. Bozanic?

7              MS. BOZANIC:  No, Your Honor.

8              THE COURT:  Mr. Lorquet, has anyone made any promise or

9      assurance to you that's not in this plea agreement to persuade

10     you to accept the plea agreement?

11             THE DEFENDANT:  No, ma'am.

12             THE COURT:  Has anyone threatened you in any way?

13             THE DEFENDANT:  No, ma'am.

14             THE COURT:  Are you pleading guilty because you are in

15     fact guilty?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Finally, any good time or early release

18     provisions, if they're applicable to your case, are between you

19     and the Bureau of Prisons.  They're not part of your plea

20     agreement.  So if the Bureau of Prisons makes you serve the

21     entire sentence, that's a chance you take in entering the plea

22     and it's not going to be grounds to withdraw the plea.

23             Do you understand that?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Okay.  Let me go over the rights associated

1  with a trial that you would be giving up.  Do you understand,

2  Mr. Lorquet, that you have the right to plead not guilty to any

3  offense charged against you and to persist in that plea?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Do you understand that you have the right to

6  a trial by jury?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  At trial you would be presumed to be

9  innocent and the Government would have to prove your guilt beyond

10 a reasonable doubt.

11         You would have the right to the assistance of counsel

12 for your defense, appointed if necessary, at trial and at every

13 stage of the proceedings.  You would have the right to confront

14 the witnesses, to see and hear them, and have them cross-examined

15 in your defense.  You'd have the right to compel the attendance

16 of witnesses at a trial, you would have the right to remain

17 silent and decide not to testify.  If you decided not to testify

18 or put on any evidence at all, these facts could not be used

19 against you.  You'd also have the right to testify at a trial if

20 you chose to do so, and you'd have the right, if convicted, to

21 appeal the conviction and the jury's finding of guilt.

22         Do you understand all these rights associated with a

23 trial?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  But by pleading guilty, if the Court accepts

1    your plea --

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  I haven't asked you a question yet,

4    Mr. Lorquet.

5              By pleading guilty, if the Court accepts your plea,

6    there will be no trial and you will have given up your right to a

7    trial, as well as all the rights we just discussed.  Do you

8    understand that?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  You're proposing to plead guilty to the

11   crime of money laundering and to aggravated identity theft.

12   Every crime is made up of elements, or parts, which the

13   Government must prove beyond a reasonable doubt.  In this case,

14   the elements the Government would have to prove on money

15   laundering are that you knowingly engaged or attempted to engage

16   in a monetary transaction; that you knew the transaction involved

17   property or funds that were the proceeds of some criminal

18   activity; that the property had a value of more than $10,000, and

19   that the property was in fact the proceeds of specified unlawful

20   activity, that is wire fraud as alleged in the indictment, and

21   that the transaction took place in the United States.

22             With respect to the aggravated identity theft, the

23   elements the Government would have to prove are that you

24   knowingly transferred, possessed or used another person's means

25   of identification without lawful authority and during and in

24

1  relation to an eligible felony, here that is the wire fraud as

2  alleged in the indictment.

3        Do you understand each essential element of the offense?

4        THE DEFENDANT:  Yes, ma'am.

5        THE COURT:  Do you understand that if this case had gone

6  to trial, the Government would have to prove each of those

7  essential elements of the crimes beyond a reasonable doubt, but

8  when you plead guilty you give up your right to have the

9  Government prove each essential element of the crime beyond a

10  reasonable doubt?

11        THE DEFENDANT:  Yes, ma'am.

12        THE COURT:  Also you're giving up your chance to argue

13  that the Government obtained the evidence improperly.  You could

14  never now file a motion to suppress the evidence.  Do you

15  understand that?

16        THE DEFENDANT:  Yes, ma'am.

17        THE COURT:  Okay.  It's my understanding that the

18  parties have signed or entered into a factual proffer.

19  Nonetheless, I'm going to ask you to listen now to Mr. Bailyn as

20  he summarizes the facts of the case because when he's finished,

21  I'm going to ask you if you agree that those facts are accurate.

22        Mr. Bailyn?

23        MR. BAILYN:  One moment, Your Honor.  Your Honor, how

24  abridged would you like me to present the facts, or should I try

25  to just accord with the factual proffer as best as possible?

1    THE COURT:  As is sufficient to meet the elements.

2    MR. BAILYN:  Okay.  Thanks, Your Honor.

3    Your Honor, on June 3, 2020, a PPP application for MEL

4    was submitted to BlueVine.  BlueVine is a loan processor, it is

5    located and its servers are located outside of the state of

6    Florida.  This application was on behalf of Lorquet.  MEL is his

7    company.

8    In the PPP application there was a misrepresentation as

9    to the number of employees and the average monthly payroll.  The

10   number of employees was 10 and the average monthly payroll was

11   86,000, approximately.  This was signed.  Included was also a

12   fraudulent IRS tax form.  This loan was granted.

13   On June 5, 2020, approximately $215,000 in PPP funds

14   were deposited into a TD Bank, that bank account was controlled

15   by the Defendant.

16   Next, on June 20, 2020, an EIDL application for MEL,

17   which is the Defendant's company, was submitted to the SBA.  The

18   SBA's computer servers and processing center are located outside

19   of the state of Florida.  This was an electronic application.

20   Again, this application also contained fraudulent

21   misrepresentations and misrepresented the cost of goods sold, the

22   gross revenues and the number of employees.  That application was

23   granted and on June 30, 2020, a loan in the approximate amount of

24   114,800 was deposited into the same TD Bank.

25   Shortly thereafter, $29,000 was wired from that same TD

26

1    Bank to Countyline Auto Center, the memo line was for the

2    purchase of a Porsche Panamera.

3         Next on March 18, 2021, another PPP application was

4    submitted to American Lending Center.  Like BlueVine, American

5    Lending Center is a participating lender or processor, it's in

6    California and its computer servers and processing center are

7    located outside the state of Florida.  This PPP application

8    included another IRS tax document that was fraudulent.  It

9    overstated payroll for MEL.  That loan was also approved and on

10   June 1st, approximately $215,000 in PPP funds were deposited into

11   a TD Bank controlled by MEL.

12        Next in this case, on August 18, 2021, an application

13   was submitted to the SBA, not for an EIDL loan, but for an SVOG

14   grant which is the Shuttered Venue Operator Grant.  This

15   application also included fraudulent tax documents, one of which

16   was an IRS Form 1120-S which represented that MEL's gross revenue

17   was approximately $5.5 million.  As part of the application

18   process, on November 12, 2021, SBA received a letter, the letter

19   purported to be from someone whose initials are C.D. who is a tax

20   preparer.  The letter falsely confirmed that MEL had paid taxes.

21   Included with that letter was another -- was an IRS Form 1120

22   that had the tax identification number or the electronic filing

23   identification number for C.D.  It also had her name.

24        That SVOG grant was awarded, and on November 22, 2021

25   approximately $2.5 million was deposited into an account in the

1    name of MEL at TD Bank.

2         SVOG had a supplemental grant program.  That

3    supplemental grant was also awarded, and on November 30, 2021 a

4    supplemental grant in the amount of approximately $1.3 million

5    was deposited into the TD Bank as well.

6         On December 1, 2021, shortly thereafter, the Defendant

7    transferred $400,000 of that Shuttered Venue Operator Grant from

8    TD account 2431 to another TD account ending in 3570, and from

9    there wired $329,000 to Elite Motor Cars of Miami.  The reference

10   in the originator beneficiary information or the wire transfer

11   information was 2022 Urus.  That refers to a Lamborghini Urus.

12   The same day of that transfer, the Defendant signed purchase

13   documents for a Lamborghini Urus, the VIN ending in 6143.

14        Five days later, the Defendant transferred approximately

15   $150,000 of that SVOG grant from the account it was deposited

16   into to Tesla Motors.  That was for the purchase of a Tesla.

17        In addition, the Defendant spent approximately $39,000

18   of the SVOG on a diamond Audemars Piguet watch.  He also spent

19   money on a rose gold and diamond pendant with his company's logo,

20   a half-kilogram gold chain with about 70 carats of diamonds, and

21   a one-kilogram gold chain.

22        THE COURT:  Does that conclude the Government's proffer?

23   We might be running out of time.  I don't know if you can see the

24   alarm is going off.

25        MR. BAILYN:  Oh, no.  That was absolutely the last word

1    I was going to say.

2            THE COURT:  Okay.

3            MR. BAILYN:  Well, I was going to say those facts are

4    sufficient to prove the elements in this case, but they're not

5    every fact the Government would prove beyond a reasonable doubt.

6            THE COURT:  Okay.  Thank you.  To my deputies, are we

7    okay?

8            US MARSHAL:  Okay.  Thanks.  No, I called the control

9    room, they said they're not getting anything on the computers in

10   the control room.  Everything should be fine for now.  They'll

11   advise me.

12           THE COURT:  Okay.  To my marshals, are we okay?  Okay.

13   All right.

14           Mr. Lorquet, I apologize for the interruption, but were

15   you able to listen to the entire proffer by the prosecutor?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  Okay.  Do you understand what the Government

18   says it can prove in your case?

19           THE DEFENDANT:  Yes, ma'am.

20           THE COURT:  You agree these facts are accurate?

21           THE DEFENDANT:  Yes, ma'am.

22           THE COURT:  Ms. Bozanic, do you take any exception or

23   objection to the facts as summarized?

24           MS. BOZANIC:  No, Your Honor.

25           THE COURT:  Do you stipulate that the Government's

1    factual recitation contains the essential elements of the crime?

2           MS. BOZANIC:  Yes, Your Honor.

3           THE COURT:  Have you had enough time now, Mr. Lorquet,

4    to consider and discuss with your attorney whether you wish to

5    plead guilty to the charges?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  Ms. Bozanic, is there anything I've omitted

8    to advise your client?

9           MS. BOZANIC:  No, Your Honor.

10          THE COURT:  How now do you plead to the charge in Count

11   7 of the indictment, Mr. Lorquet?  Guilty or not guilty?

12          THE DEFENDANT:  Guilty, ma'am.

13          THE COURT:  How do you plead to the charge in Count 9 of

14   the indictment?  Guilty or not guilty?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  Are you satisfied, Ms. Bozanic, that your

17   client understands the charges and the consequences of his plea?

18          MS. BOZANIC:  Yes, Your Honor.

19          THE COURT:  Mr. Bailyn, is there any reason I should not

20   accept the Defendant's plea?

21          MR. BAILYN:  No, Your Honor.

22          THE COURT:  I find the Defendant is alert and

23   intelligent, that he's fully competent and capable of entering an

24   informed plea in this case.  That he's aware of the nature of the

25   charges and the consequences of the plea, and that the plea of

1    guilty is a knowing and voluntary plea supported by an

2    independent basis in fact containing each of the essential

3    elements of the offenses.

4          I also find that the Defendant has freely, voluntarily

5    and intelligently entered his plea of guilty here today with no

6    promises other than those set forth in the plea agreement, and no

7    threats and without any mental impediment of any kind.

8          In addition, I find that the Defendant has had the

9    advice and counsel of a competent lawyer with whom he says he is

10   satisfied.

11         I further find that the waiver of appellate rights was a

12   knowing and voluntary waiver made after consultation with

13   counsel.

14         I will recommend that Judge Moore accept the plea, and

15   he adjudge the Defendant guilty of Counts 7 and 9 of the

16   indictment.

17         Mr. Lorquet, a written presentence report will be

18   prepared by the Probation Office to assist in sentencing.  You'll

19   be asked to give information to the probation officer for the

20   report, and your attorney may be present for that if you wish.

21         If you have any specific requests for treatment

22   modalities or place of incarceration, please do it during the

23   PSI.

24         You and your attorney will have the opportunity to read

25   the Presentence Investigation Report and file objections to it

1    prior to the sentencing hearing.

2            You and your counsel will have the opportunity to speak

3    on your behalf at the sentencing hearing.  If there's any victims

4    of the offense, the victims will have the chance to be heard at

5    the sentencing hearing.

6            I'll now refer you to the Probation Office for a

7    presentence investigation and report.

8            Counsel, the sentencing will be set by separate order.

9    Please let Judge Moore know if you need more than 30 minutes.

10           A report and recommendation will follow this hearing,

11   and we are adjourned.

12           MS. BOZANIC:  Thank you, Your Honor.

13           THE COURT:  Mr. Lorquet, your next appearance is in

14   front of Judge Moore.  Good luck to you there.

15           THE DEFENDANT:  Thank you.

16           MR. BAILYN:  Thank you, Judge Louis.

17           COURTROOM DEPUTY:  All rise.

18           (PROCEEDINGS CONCLUDED)

19                         *  *  *  *  *

20                  C E R T I F I C A T E
     I certify that the foregoing is a correct transcript from the
21   digital audio recording of proceedings in the above-entitled
     matter.
22
     4/17/2023              /s/ Dawn M. Savino, R.P.R., C.R.R.
23   Date                   DAWN M. SAVINO, R.P.R., C.R.R.

24

25