**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cr-20326-KMM

UNITED STATES OF AMERICA

v.

ANDRE LORQUET,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    **THIS CAUSE** is before the Court on Defendant Andre Lorquet's ("Lorquet") Motion to Withdraw Guilty Plea (ECF No. 85). The Government filed a Response (ECF No. 89), to which Defendant filed a Reply (ECF No. 92). The Motion was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, to take all necessary and proper action as required by law and/or to submit a Report and Recommendation on Defendant's Motion to Withdraw Guilty Plea. (ECF No. 86). The undersigned held a hearing on Defendant's Motion on October 24, 2023, which was continued to October 31, 2023. Upon consideration of the Motion, Response, Reply, a review of the record, with the benefit of testimony and argument advanced at the hearings, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Withdraw Guilty Plea be **DENIED**.

**I.    DISCUSSION**

    On July 22, 2022, Defendant was charged by Indictment with four counts of wire fraud, in violation of 18 U.S.C. § 1343; three counts of money laundering, in violation of 18 U.S.C. § 1957; and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). (ECF No. 1).

    On January 24, 2023, the undersigned held a change of plea hearing at which Defendant

1

pled guilty to Count 7 of the Indictment, which charges Defendant with money laundering, in violation of 18 U.S.C. § 1957; and Count 9 of the Indictment, which charges Defendant with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Defendant was at that time represented by Zeljka Bozanic, Esq.

Before conducting the plea colloquy, the undersigned advised Defendant that he was under oath and if he answered any questions falsely his answers may later be used against him in another prosecution for perjury or for making a false statement, which Defendant confirmed he understood. (ECF No. 63 at 5:6–10). The undersigned explained the purpose of questioning him: "I have to determine that your decision to plead guilty is a knowing and voluntary decision supported by an independent basis in fact, so I'm going to ask you some questions to make sure that you understand what's happening, you know what your options are, you know what rights you would be giving up if you plead guilty, and you know what the possible penalties and other consequences will be if you plead guilty." (ECF No. 63 at 5:14–21). The undersigned asked Defendant to tell me if I asked him a question he did not understand so I could explain it better or differently for him. Defendant said he would. (ECF No. 63 at 6:03–08).

I questioned Defendant about his education. He responded that he had not graduated high school nor received a diploma, but was in school up until the 12th grade. (ECF No. 63 at 7:7–15). I asked Defendant if he could read and write; Defendant responded, "Yes, ma'am." (ECF No. 63 at 7:22–24).

I asked if Defendant had ever been treated for any type of mental illness; Defendant responded that he had not. (ECF No. 63 at 7:25–8:05). I asked Defendant if he felt like he was thinking clearly and understood what was happening; Defendant responded in the affirmative. (ECF No. 63 at 8:21–23). Based on his responses and my observations of him, I found that

2

Defendant was alert and competent to proceed with the change of plea. (ECF No. 63 at 8:24–9:01).

In response to my questions about his relationship with his lawyer, Defendant said that he had enough time to think about the charges in this case and to talk about the case with his attorney (ECF No. 63 at 10:10–12); and that he had reviewed the discovery with his attorney and had discussed with his attorney possible defenses to the charges he might have and witnesses he might have called. (ECF No. 63 at 10:13–20). I asked Defendant if there was anything Defendant had asked his lawyer to do that she had failed to do, or if there was any question that Defendant had asked his attorney that she had not been able to answer to his satisfaction; Defendant responded, "No, ma'am." (ECF No. 63 at 11:06–11). The undersigned asked Defendant if he was fully satisfied with his attorney and the advice and representation she had given him in this matter, to which he responded that he was. (ECF No. 63 at 11:12–14).

Defendant confirmed that he had a chance to review each and every paragraph of the plea agreement with his attorney before he had signed it and he was able to ask her questions about the plea agreement. (ECF No. 63 at 11:15–12:07). The undersigned asked Defendant if he understood what is in the plea agreement, to which he responded that he did. (ECF No. 63 at 12:08–10). The undersigned asked Defendant if anyone had threatened Defendant in any way to persuade him to accept the plea agreement, to which Defendant responded, "No, ma'am." (ECF No. 63 at 21:12–13). Defendant affirmatively responded that he was pleading guilty because he was, in fact, guilty. This was corroborated by his signing of the factual proffer, (ECF No. 47), prior to the hearing, and admission at the hearing that the summary of facts provided by the Government were accurate. (ECF No. 63 at 28:17–21, 29:10–15).

I asked Mr. Lorquet if he and his attorney had discussed how the sentencing guidelines might apply in his case, and he responded affirmatively. (ECF No. 63 at 15:22–25). I reviewed

3

with him, for example, the possibility that under the sentencing guidelines he might get points off for pleading guilty and accepting responsibility for his commission of the crime; I reviewed with him the provision of the plea agreement in which the Government agreed to recommend up to three points off for acceptance of responsibility, so long as he met the criteria listed in the plea agreement. I also confirmed his understanding that the Court would not be bound by the recommendation and that if the Court did not follow the recommendation to reduce his sentencing guidelines by up to two points for acceptance of responsibility, that would not be grounds to withdraw his guilty plea. (ECF No. 63 at 16:15–17:07). Indeed, Defendant acknowledged his understanding that if the Court imposed a sentence that was higher than what he or his attorney had estimated that would not be grounds to withdraw his guilty plea. (ECF No. 63 at 17:08–17).

Following the hearing, the undersigned entered a Report and Recommendation to the District Court recommending that Defendant be found to have freely and voluntarily entered his guilty plea to Counts 7 and 9 of the Indictment filed in this case and that he be adjudicated guilty of the offenses. (ECF No. 43). The District Court adopted the Report and Recommendation and set sentencing for March 30, 2023. (ECF No. 50).

On March 13, 2023, Defendant moved to withdraw his guilty plea. Retained counsel Bozanic additionally moved to withdraw as counsel, which was granted. (ECF Nos. 56, 61). Defendant's (first) motion to withdraw represented that he had pled guilty because he was under duress and that he did not understand that what he was signing was a plea agreement, but rather, he believed he was signing paperwork related to the reinstatement of his bond.[1] (ECF No. 55). The Government failed to respond to the motion to withdraw, leaving Defendant's claims uncontroverted. The undersigned issued a Report and Recommendation on Defendant's motion

---

[1] Defendant had initially been released on bond, but that bond was revoked. (ECF No 40). Defendant had violated his bond conditions in attempting to apply for a passport card. (ECF Nos. 35, 36, 40, 54).

4

recommending that Defendant be permitted to withdraw his guilty plea. (ECF No. 67).

The Government filed objections to the Report and Recommendation, which presented evidence of recorded conversations from jail that contradicted Defendant's factual basis for moving to withdraw his plea. The recorded calls reveal that Defendant's decision to move to withdraw was motivated by concerns about the possible sentence the Court could impose and his prospect of a better outcome at trial. The Government cited to a recorded call on January 26, 2023 during which Defendant explains his understanding that the judge would have discretion to decide what sentence he received. In light of that uncertainty, he said, "I rather just take it to court. I rather just take it to trial if that's the case and the judge has the last call on the plea then I'll take it [to] court. I have a better chance of winning." (ECF No. 70 at 6). The Government also cited to a later call between Defendant and his mother during which Defendant states, "I'd rather withdraw [the plea] and I could beat the two charges on there and still get two years." (ECF No. 70 at 7). In this call, the Government represents that Defendant goes on to state that "[his sentence] still goes by the guidelines, by the First Act. I just read the law book. I still get the First Law Act, the first time ever getting in trouble." (ECF No. 70 at 8).

Following appearance by newly-appointed counsel, Defendant withdrew his motion to withdraw his guilty plea. (ECF No. 76). The District Court accordingly set sentencing for August 24, 2023. (ECF No. 77). At sentencing, the District Court found that Defendant's conduct leading to his bond revocation warranted a two-level enhancement for obstruction of justice. Defendant then announced, again, that he wished to withdraw his plea of guilty. (ECF No. 80). Defendant filed the instant Motion to Withdraw Guilty Plea. (ECF No. 85). The matter was referred to the undersigned, and this time the Government filed a response in opposition.

An evidentiary hearing was held on October 24, 2023 and continued to October 31, 2023.

Defendant testified at the hearing that he has a learning disability and that he has some ability to read and write, but requires assistance. Defendant did not remember what his learning disabilities were called. He testified that he knew he took medication for attention deficit disorder. Defendant testified that he has trouble with long-term and short-term memory and that he received treatment in elementary school and high school.

Defendant testified that he told his first attorney that he did not want to plead guilty and that he wanted to go to trial. Defendant testified that his attorney ignored his requests to proceed to trial. Defendant testified that he felt like his back was against a wall and he felt pressured to plead guilty by his attorney. Defendant testified that he felt like if he did not plead guilty that his attorney would not defend him at trial.

Defendant testified that he also had received threats that persuaded him to plead guilty. Defendant testified that he and his family received threats from individuals who told him to either plead guilty or leave. Defendant identified the individuals who had threatened him only as persons who had been involved in his loan. He claimed he had received the threats in November of 2022. When asked why the individuals would threaten him to plead guilty, Defendant testified that it was because these individuals did not want him to go to trial. The undersigned asked Defendant why in response to my specific questioning at the plea colloquy whether anyone had threatened him he had answered in the negative. Defendant testified that he was told he could only answer "yes" or "no" to my questions and that he did not know that he could say more; he said this is the reason was why he was crying[2] at the hearing for his change of plea. When asked whether the undersigned should credit his sworn testimony now or at the change of plea, Defendant responded that he is

---

[2] The transcript from the change of plea hearing does not reflect the fact that Defendant cried at the hearing. However, it is reflected that at some point, I paused the proceeding to offer Defendant a moment to collect himself. (ECF No. 63 at 12:18–19).

telling the truth now, which he explained was why he was not crying at the present hearing.

The undersigned asked Defendant about the phone calls cited to by the Government, specifically that Defendant did not seem under duress in those calls. Defendant responded that they are seven-minute phone calls and there was not enough time to explain everything.

At the October 31, 2023 hearing, Defense counsel represented that Defendant's learning disability was not initially disclosed to him, but that over time, when he went to visit Defendant to discuss this case, Defense counsel noticed that Defendant was taking a significant amount of time to review the information and would ask him about certain words. Defense counsel further posited that Defendant is embarrassed by his learning disability and perhaps hesitated to reveal it for that reason.

**II.   DISCUSSION**

A criminal defendant may withdraw a guilty plea after the Court accepts it but before it imposes a sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *see also United States v. Williams*, 803 F. App'x 379, 380 (11th Cir. 2020). "A pre-sentence motion to withdraw is to be liberally construed," although there is no absolute right to withdrawal. *United States v. Cesal*, 391 F.3d 1172, 1179 (11th Cir. 2004), *vacated on other grounds by Cesal v. United States*, 545 U.S. 1101 (2005) (quoting *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988)).

In deciding a pre-sentence motion to withdraw guilty plea, the Court considers the "totality of the circumstances surrounding the plea," including "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *United States v. Chicago*, 711 F. App'x 512, 515 (11th Cir. 2017); *see also*

*Buckles*, 843 F.2d at 471–72.  "The defendant carries the burden to show a fair and just reason for withdrawal of his plea."  *United States v. Midkiff*, 806 F. App'x 678, 680 (11th Cir. 2020).

"There is a strong presumption that statements made during the plea colloquy are true; accordingly, the defendant bears a heavy burden to show that his testimony during the plea colloquy was false."  *United States v. Darce*, No. 14-20017-CR, 2015 WL 13016398, at *4 (S.D. Fla. May 15, 2015).  "Mere conclusory allegations do not warrant the withdrawal of a guilty plea." *Id.*

The record supports the conclusion that Lorquet had close assistance of counsel when he entered his plea.  At the change of plea hearing, he testified under oath in response to my questions that he had reviewed the charges, and the evidence the Government would use to prove those charges at trial, with his attorney; that he had had enough time with her to talk about the case; and that he had reviewed each and every paragraph of the plea agreement with her before signing it. He testified that he was satisfied with the advice and representation she had given him.

Even if I credit the testimony Lorquet provided at the evidentiary hearing on the instant Motion, his complaints are too vague to undermine my finding that he had close assistance of counsel.  He claims that he told prior counsel that he did not want to plead guilty and he feared she would not represent him at trial.  This is insufficient to overcome his sworn testimony that she met with him, discussed the charges and the sentencing guidelines, and reviewed the plea agreement and the government's discovery.  I find the first factor has been met.

I similarly find on this record that Lorquet's plea was entered knowingly and voluntarily. At the evidentiary hearing, Lorquet testified that he has a learning disability, a fact that defense counsel corroborated by explaining his interactions with Lorquet.  Again, assuming the veracity of this statement, it is insufficient to overcome my prior finding that his plea in this case was

knowingly entered. Accepting that Lorquet may need more time to process the information conveyed to him, the record reveals a number of times and ways that he was advised about the nature of the charges and the consequences of the plea. The written plea agreement articulated the charges to which he was pleading guilty and the maximum penalties the Court could impose, including terms of imprisonment, fines, supervised release. I reiterated these charges and potential consequences orally at the change of plea hearing, and Lorquet indicated his understanding. Additionally, at the outset of the change of plea hearing, I explained the purposes of my questioning to include the need to determine that his decision to plead guilty was a knowing and voluntary decision; to this end, I invited him to tell me if I asked him any question he didn't understand, so that I might ask it differently or explain it better. (ECF No. 63 at 6:03–08). I find Lorquet's proffered learning disability insufficient to overcome the substantial record evidence that his decision to plead guilty was knowing and voluntary, and his suggestion that the learning disability prevented him from appreciating the consequences of the plea is not credible. *See United States v. Harris*, 394 Fed. Appx. 676, 679 (11th Cir. 2010).

While Defendant testified at the evidentiary hearing that he was under duress in changing his plea, I do not credit his claims of duress. At best, Defendant has used this term to describe the ambivalence he felt in pleading guilty and taking one step closer to sentencing. Lorquet did not substantiate why he felt his back was up against a wall even if his retained counsel would not represent him at a trial; for example, he did not claim that he could not have retained new counsel or asked for appointed counsel. Indeed, at the change of plea hearing, I advised him of his right to counsel—appointed if needed—at trial and at every stage of the proceeding. (ECF No. 63 22:11–13). Nor do I credit his vague claims that someone threatened him not to go to trial. Neither the speaker nor the threat was identified; nothing here would allow me to agree with his

characterization that the communication, if it occurred at all, was in fact a threat. *See United States v. Perez-Hernandez*, 490 F. App'x 275, 277 (11th Cir. 2012) (affirming trial court denial of motion to withdraw based on unspecified confusion and fear). In sum, I find his decision to plead guilty was not coerced, and was a knowing and voluntary decision.

My findings here do not contradict my prior Report and Recommendations that the first two prongs "favor Defendant being allowed to withdraw his guilty plea." As noted therein, Defendant's claims, that he signed under duress, and that he did not know he was signing a plea agreement, though vague were uncontroverted by the Government. On the record as it then stood, the prior finding was limited to a recommendation that these prongs weighed in favor of granting the Motion. On this record, and with the benefit of Defendant's in-court testimony, I find Defendant's claims of ineffective counsel are not credible. His explanation that he withheld these facts from me at the change of plea hearing because counsel instructed him to provide only "yes" or "no" answers does not explain why he could not nonetheless testify truthfully; he could have, consistent with that instruction, answered "no" when I asked if he was satisfied with her advice and representation; or when I asked if he had reviewed each and every paragraph of the plea agreement before signing it; or when I asked if he fully understood what was in the agreement.

It is additionally difficult to credit Defendant's claim of coercion in light of the timing of Defendant's Motion to withdraw his guilty plea. Defendant's first motion to withdraw was filed two weeks after the disclosure of the Presentence Investigation Report. (ECF Nos. 53, 56). The motion was withdrawn after new counsel was appointed and the Government filed objections to the undersigned's Report and Recommendations, attaching transcripts of his recorded jail calls that reveal his statements to family members about his true motivation for filing that motion. Then, at his sentencing hearing and following the Court's ruling that his application for a passport card,

10

in violation of his conditions of release on bond, constituted conduct that warranted an enhancement for obstruction of justice, Defendant renewed his request to withdraw his guilty plea. The proximity to these sentencing events suggests that Lorquet was motivated to avoid or delay sentencing, not to bring to the Court's attention a valid concern about counsel or his understanding of his plea. *See United States v. Rogers*, 848 F.2d 166, 168–69 (11th Cir. 1988) (finding the timing of a defendant's request to withdraw a guilty plea "suspicious"). "The time between the entry of a plea and a motion to withdraw may be indicative of the defendant's motivation." *Darce*, 2015 WL 13016398, at *6. "A significant delay between the plea and the request to withdraw suggests a calculated effort to improve one's position instead of a 'swift change of heart.'" *United States v. Pitts*, 463 F. App'x 831, 833 (11th Cir. 2012). As I admonished him at the sentencing hearing, it is not valid grounds for Defendant to withdraw his guilty plea just because he is not happy with the sentence imposed—or about to be imposed. (ECF No. 63 at 15:15–21).

"When a defendant has received close assistance of counsel and pleaded guilty knowingly and voluntarily, we have declined to give considerable weight or attention to the third and fourth factors." *Pitts*, 463 F. App'x at 832–33. "It is undisputed, however, that judicial resources would not be conserved by allowing Defendant to withdraw his guilty plea." *United States v. Groover*, No. 13-80038-CR, 2014 WL 1464470, at *7 (S.D. Fla. Apr. 14, 2014); *Luczak*, 2009 WL 1514654, at *4.

With respect to the final factor, there is not any prejudice to the Government if the Defendant would be permitted to withdraw his guilty plea. "There is no evidence of such prejudice before this Court aside from the fact that witnesses would have to be called and members of the U.S. Attorney's Office would have to proceed to trial on this case." *United States v. Torres*, No. 13-14055-CR, 2014 WL 4219589, at *4 (S.D. Fla. Aug. 24, 2014). However, Defendant has not

11

"presented any legal or factual basis to justify this Court recommending that he be permitted to withdraw his guilty plea." *Id.*

### III.  RECOMMENDATION

Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Withdraw Guilty Plea (ECF No. 85) be **DENIED**.

The Parties will have **FOURTEEN (14) DAYS** from the date of service of this Report and Recommendation within which to file written objections, if any, for consideration by the United States District Judge. Pursuant to Federal Rule of Criminal Procedure 59(b), Eleventh Circuit Rule 3-1, and accompanying Internal Operating Procedure 3, the Parties are hereby notified that failure to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 8th day of December, 2023.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE